**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| JANE DOE,<br><br>Plaintiff,<br>v.<br><br>UNIFIED GOVERNMENT OF WYANDOTTE COUNTY/KANSAS CITY, KANSAS,<br><br>And<br><br>KARL OAKMAN, Individually<br><br>Defendants. | ) | **JURY TRIAL DEMANDED** |

# COMPLAINT

COMES NOW, Plaintiff Jane Doe ("Plaintiff"), by and through her attorney Rose C. Briscoe of Law Office of Rose C. Briscoe, LLC, and for her Complaint against the Unified Government of Wyandotte County/Kansas City, Kansas ("Unified Government") and Chief of Police Karl Oakman ("Defendant Oakman"), individually, and hereby states and alleges as follows:

## JURISDICTION

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3)-(4), because this is a civil action arising under Title VII of the Civil Rights Act of 1964 as amended, and 42 U.S.C. §1983.

## VENUE

2. Venue is proper in this district under 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment practices were committed in the state of Kansas, the relevant employment

records are maintained in this district, Defendant Unified Government is headquartered in Kansas City, Wyandotte County, Kansas, which is located in this district, and there is no other district that has a substantial connection to the claims.

3. Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because all Defendants are residents of the state in which this District is located.

4. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## PARTIES

***Plaintiff***

5. Plaintiff is a female police officer employed by the Kansas City, Kansas Police Department in Wyandotte County, Kansas.

6. Plaintiff is and was a resident of the state of Kansas at all times relevant to the allegation in this Complaint.

***Defendant Unified Government***

7. Defendant Unified Government is headquartered at 701 N. 7th St. Trafficway, Kansas City, Wyandotte County, Kansas 66101.

8. Defendant Unified Government exists and is organized under the laws of the State of Kansas.

9. Defendant Unified Government has over five hundred (500) employees in Wyandotte County.

10. Defendant Unified Government is a consolidated local municipal and county government organized and existing under the laws of the State of Kansas.

11. Defendant Unified Government controls the terms and conditions of employment for Kansas City, Kansas Police Department personnel.

12. Defendant Unified Government is an "employer" within the meaning of 42 U.S.C. § 2000e (Title VII).

13. At all times relevant to this Complaint, Defendant Unified Government was Plaintiff's employer.

***Defendant Karl Oakman***

14. Defendant Oakman, on information and belief, is a resident of the state of Kansas in which this District is located.

15. Defendant Oakman is a male employee of Defendant Unified Government.

16. At all times relevant to this Complaint, Defendant Oakman was employed as the Chief of Police of the Kansas City, Kansas Police Department in Wyandotte County, Kansas, and acted with authority and control over the terms and conditions of Plaintiff's employment.

17. At all times relevant to this Complaint, Defendant Oakman was employed as the Chief of Police of the Kansas City, Kansas Police Department in Wyandotte County, Kansas, and was responsible for overseeing all KCKPD bureaus, personnel, and police stations, including but not limited to the daily operations of the Kansas City, Kansas Police Department.

18. At all times relevant to this Complaint, Defendant Oakman, while acting in his individual capacity, acted under color of state law, statutes, ordinances, regulations, policies, customs, or usages of the State of Kansas in this District.

19. At all times relevant to this Complaint, Defendant Oakman, as Chief of Police, acted with authority and control over Plaintiff's employment terms and conditions; acted with authority and control over all KCKPD employees, including but not limited to KCKPD officers,

Sergeants, Captains, and Bureau of Operations and Internal Affairs personnel; the discipline of KCKPD officers; the facilities within the Kansas City, Kansas Police Department, including but not limited to locker rooms and changing facilities; policies and procedures of the KCKPD; training and supervision of KCKPD officers, Sergeants, Captains, Bureau of Operations personnel and Internal Affairs personnel within the KCKPD; and was responsible for the Kansas City, Kansas Police Department adhering to local, state, and federal laws.

20. Defendant Oakman was personally involved in the deprivation of Plaintiff's constitutional rights by directly ordering, authorizing, or knowingly acquiescing in the sex discrimination, disparate treatment, hostile work environment, and retaliation concerning Plaintiff's employment as alleged herein.

**ADMINISTRATIVE PREREQUISITES**

21. Plaintiff timely filed an initial Charge of Discrimination ("Charge") against Defendant Unified Government on or about October 24, 2025, with the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging that she was discriminated against based on her sex and was sexually harassed. The matter was assigned EEOC Charge Number 563-2026-00291. A copy of the Charge is attached hereto as *Exhibit A*.

22. On or about September 24, 2026, Plaintiff received a Notice of Right to Sue from the U.S. Department of Justice Civil Rights Division concerning her initial charge; a copy is attached hereto as *Exhibit B*.

23. Plaintiff timely filed a second Charge of Discrimination ("Charge") against Defendant Unified Government on or about March 25, 2026, with the EEOC, alleging retaliation. The matter was assigned EEOC Charge Number 563-2026-02406. A copy of the Charge is attached hereto as *Exhibit C*.

24. On or about September 24, 2026, Plaintiff received a Notice of Right to Sue from the U.S. Department of Justice Civil Rights Division concerning her second Charge; a copy is attached hereto as *Exhibit D*.

25. Plaintiff timely filed a third Charge of Discrimination ("Charge") against Defendant Unified Government on or about June 3, 2026, with the EEOC, alleging sex discrimination and retaliation. The matter was assigned EEOC Charge Number 563-2026-03441. A copy of the Charge is attached hereto as *Exhibit E*.

26. On or about September 24, 2026, Plaintiff received a Notice of Right to Sue from the U.S. Department of Justice Civil Rights Division concerning her third Charge; a copy is attached hereto as *Exhibit F*.

27. Plaintiff timely filed this action within ninety (90) days of September 24, 2026.

28. Plaintiff timely filed her claims under 42 U.S.C. § 1983 within two (2) years of the acts giving rise to those claims.

29. Plaintiff has satisfied and exhausted all administrative prerequisites prior to the filing of this action.

## <u>FACTUAL ALLEGATIONS</u>

***Plaintiff's Employment with KCKPD***

30. Plaintiff is a female police officer employed by the Kansas City, Kansas Police Department in Wyandotte County, Kansas.

31. Plaintiff was hired as a full-time Patrol Officer for the Kansas City, Kansas Police Department in Wyandotte County, Kansas on or about January 13, 2022.

32. Plaintiff became a Field Training Officer on or about September 12, 2025.

33. Throughout Plaintiff's employment at the Kansas City, Kansas Police Department, Plaintiff worked primarily at West Patrol, with the exception of working one (1) month at South Patrol in June 2022, and at East Patrol from May 2022 until October 2022.

34. The Kansas City, Kansas Police Department is a majority-male police force with female officers consistently comprising less than 15% of the Department’s officers throughout Plaintiff’s tenure with the Kansas City, Kansas Police Department.

***The Shared Male/Female Locker Room***

35. From Plaintiff’s date of hire on or about January 13, 2022 until on or about October 17, 2025, Plaintiff and other female officers assigned to West Patrol were required to share a locker room with male officers.

36. The shared locker room was a small, open communal area with no curtains, no partitions, no stalls, nor any barriers for privacy.

37. The shared locker room was not separated by sex and contained no separate, private, or secure changing areas for female officers.

38. The shared locker room was used daily by male and female officers to store their belongings and equipment in individual lockers.

39. The shared locker room was used daily by male officers to undress and change in and out of their uniforms.

40. Male officers who undressed in the shared locker room were often seen mostly naked and only wearing their boxer briefs.

41. Plaintiff regularly witnessed male officers in the shared locker room undressing and also witnessed male officers in the shared locker room wearing only boxer briefs.

42. Plaintiff was uncomfortable with the thought of getting undressed in the shared

locker room.

43. Plaintiff never changed her clothes in the shared locker room, because doing so would have required her to expose herself down to her bra and underwear in the presence of male officers.

44. Other female officers required to share a locker room with male officers were also uncomfortable getting undressed in the shared locker room and did not do so.

***Briones Sexually Assaulted and Sexually Harassed Plaintiff in the Shared Locker Room***

45. On or about October 13, 2025, at approximately 3:00 pm, Plaintiff was putting her gear away in her locker located in the shared locker room at West Patrol when her shift mate, male colleague, Officer Michael "Jordan" Briones ("Briones") walked into the locker room and proceeded to get undressed, which he has done in the past. Officer Briones then came up to Plaintiff after she put her duty vest in her locker, still dressed in her uniform with her duty belt on, and started rubbing Plaintiff's vagina from the outside of her pants with his hand.

46. Plaintiff immediately told Briones to stop touching her.

47. Briones dropped his hand, and Plaintiff finished putting her duty belt in her locker and immediately left the locker room.

48. At approximately 3:06 pm on October 13, 2025, Briones called Plaintiff and apologized for rubbing Plaintiff's vagina in the shared locker room.

49. Still in shock, at approximately 3:14 pm on or about October 13, 2025, Plaintiff attempted to contact her colleague, Officer Matthew Straws, to tell him about Briones rubbing Plaintiff's vagina with his hand in the shared locker room, but Officer Straws did not answer the call.

50. When Officer Straws returned Plaintiff's call at approximately 4:44 pm on or about October 13, 2025, Plaintiff told Officer Straws that Briones rubbed Plaintiff's vagina with his hand in the shared locker room, and Plaintiff expressed to Officer Straws that she was in shock.

51. On or about October 16, 2025, at approximately 7:30 am, Plaintiff reported to her direct supervisors, Sergeant Christopher James and Captain Keith Falkner, that Briones had approached her in the shared locker room and used his hand to rub Plaintiff's vagina.

52. While reporting the October 13, 2025 sexual assault and harassment to Sergeant Christopher James and Captain Keith Falkner on or about October 16, 2025, Plaintiff told Sergeant Christopher James and Captain Keith Falkner that she was struggling to sleep, eat, and focus as a result of the sexual assault and harassment.

53. After Plaintiff reported Briones to Sergeant Christopher James and Captain Keith Falkner, Captain Falkner notified the Bureau of Operations and Internal Affairs.

54. Captain Falkner encouraged Plaintiff to make a report to Internal Affairs.

55. Plaintiff requested that Union Representative, Officer Brian Lynn, accompany her to Internal Affairs, and Officer Lynn agreed to do so.

56. On or about October 16, 2025, at approximately 12:21 pm, Plaintiff made a report and recorded statement to Internal Affairs Detective Jacob Sledd and Major Brittanie Pruitt concerning Briones using his hand to rub Plaintiff's vagina in the shared locker room.

57. After Plaintiff reported to Internal Affairs Detective Jacob Sledd and Major Brittanie Pruitt on or about October 16, 2025, that Briones used his hand to rub Plaintiff's vagina in the shared locker room, Assistant Chief Major Shane Turner sent out a department-wide email on or about October 17, 2025, which stated:

> "Effective immediately you may no longer change your clothing in the various locker rooms that are not separated by gender. Removing outer equipment such as outer vest carriers and duty belts and placing them in your locker is acceptable. If it is necessary to change your clothing you may use bathroom facilities or other secure facilities as long as you enter and leave the facilities fully clothed."

58. On or about Saturday, October 18, 2025, at approximately 1:15 pm, Plaintiff was notified by Officer Straws that on October 17, 2025, construction had started on the locker room at West Patrol, and construction was completed shortly thereafter.

59. On or about Monday, October 20, 2025, at approximately 2:51 pm, Plaintiff received a phone call from Officer Jacob Young asking if it was okay if Officer Thomas Leerar could switch lockers with Plaintiff, as his old locker was in the newly designated female part of the locker room, and Plaintiff was happy to switch lockers with Officer Leerar.

60. On or about December 9, 2025, the Wyandotte County District Attorney's Office charged Briones with the class A person misdemeanor of Sexual Battery in violation of K.S.A. 21-5505(a) & (c)(1) for touching Plaintiff without her consent on October 13, 2025, which was filed under Case Number WY-2025-CR-001635.

61. The Sexual Battery charged against Briones on or about December 9, 2025 by the Wyandotte County District Attorney's Office, under Case Number WY-2025-CR-001635, related to the incident that occurred on October 13, 2025, when Briones used his hand to rub Plaintiff's vagina in the shared locker room at the Kansas City, Kansas Police Department at West Patrol.

62. On or about June 3, 2026, Briones entered a No Contest Plea to an amended criminal charge of Battery - Bodily Harm under K.S.A. 21-5413(a)(1) & (g)(1) related to the incident of him rubbing Plaintiff's vagina in the shared locker room at West Patrol whereby

the court sentenced Briones to a six (6) month jail sentence imposed with probation granted for twelve (12) months and a condition that Briones have no contact with the victim and obtain a sex offender evaluation and follow any recommendations.

***Briones' Known Propensities to Sexually Harass Female Officers***

63. Prior to Plaintiff being sexually assaulted and harassed by Briones in the shared locker room, Briones sexually harassed another female officer on several occasions for years.

64. Briones' prior sexual harassment against at least one other female officer was known by several other police officers employed by the Kansas City, Kansas Police Department, including management-level KCKPD employees Sergeant Dwayne Donato and Sergeant Tobi Wolf.

65. Despite Sergeant Donato and Sergeant Wolf knowing that Briones had been sexually harassing another female police officer for years before Briones sexually assaulted and harassed Plaintiff, Sergeant Donato and Sergeant Wolf did not take any reasonable steps to stop the sexual harassment by Briones against the other female police officer, nor did Sergeant Donato and Sergeant Wolf report the known sexual harassment by Briones against the other female officer to upper command, Internal Affairs, or Human Resources. Instead, Sergeant Donato used a laughing emoji in a group chat when another male officer made reference to how the female officer would get "[A] hug from Briones" after it was known within the department that Briones had been sexually harassing that other female employee.

66. Despite the Defendant being put on notice of Briones' sexual harassment of the other female officer due to Sergeant Donato and Sergeant Wolf knowing about the sexual harassment, there was never an investigation conducted concerning Briones' sexual harassment towards the other female officer. Instead, Briones was allowed to be an Acting

Sergeant prior to rubbing his hand on Plaintiff's vagina in the shared locker room.

67. Despite the Defendant being put on notice of Briones' sexual harassment of the other female officer due to Sergeant Donato and Sergeant Wolf knowing about the sexual harassment, Briones was still allowed to share a locker room with female officers, and it would ultimately be the place where he sexually assaulted and harassed Plaintiff.

68. To the best of Plaintiff's knowledge, information, and belief, Briones has an extensive disciplinary history, including being kicked out of the part-time Special Operations Unit (SOU) at the beginning of 2025.

69. Despite Briones' prior known propensities to sexually harass at least one other female officer, Briones was allowed to be an Acting Sergeant prior to rubbing his hand on Plaintiff's vagina in the shared locker room.

***Defendant Oakman's Knowledge and Responsibility for the Shared Locker Room***

70. As Chief of Police, Defendant Oakman had final authority over the assignment and configuration of KCKPD facilities, including but not limited to the West Patrol, South Patrol, and East Patrol locker rooms.

71. Defendant Oakman knew or should have known that female officers at West Patrol and South Patrol were expected to share a locker room with male officers and that female officers had no designated private place to change their clothes.

72. Defendant Oakman had the authority and means to provide a separate changing area at any time, as shown by the Department's completion of a separate area for female officers within days of October 17, 2025, yet Defendant Oakman chose not to do so until Plaintiff reported being sexually assaulted and harassed by Briones in the shared locker room.

***Retaliation***

73. On or about March 12, 2026, approximately one week before a scheduled mediation concerning Plaintiff's first filed EEOC Charge, Plaintiff was advised by the Kansas City, Kansas Police Department that she was being investigated by the KCKPD Internal Affairs Unit for allegedly making a false arrest almost one (1) year prior, which was the first time Plaintiff became aware of any such allegation or investigation against her from one (1) year prior, and which allegations Plaintiff denied.

74. After Plaintiff filed a second EEOC Charge on or about March 25, 2026 alleging retaliation due to the newly surfaced Internal Affairs investigation against her, Plaintiff was served with a letter of suspension and received an unpaid two-day suspension as well as fifteen (15) disciplinary points.

75. The suspension and fifteen (15) disciplinary points issued to Plaintiff were reflected in her personnel jacket - a permanent disciplinary record.

76. Male officer, Carlos Ulloa, is responsible for writing a report one (1) year prior and including the wrong suspect name on the report - not Plaintiff, who was the subject matter concerning the newly surfaced Internal Affairs investigation against Plaintiff. Plaintiff relied on Officer Ulloa's report and the suspect's name Ulloa listed in the report when Plaintiff acted in good faith at the time she made an arrest of that suspect one (1) year prior. Despite Internal Affairs knowing that Officer Ulloa wrote the wrong suspect information on the report in which Plaintiff relied in making an arrest, Plaintiff was disciplined more harshly than Officer Ulloa. Officer Ulloa was not disciplined with suspension like Plaintiff. Instead, Officer Ulloa only received disciplinary points.

77. Major Brittanie Pruitt was with Plaintiff when Plaintiff reported the sexual

assault and harassment committed by Briones, and despite Plaintiff committing no wrongdoing regarding the allegations of the false arrest one (1) year prior, Major Pruitt pushed for Plaintiff to be disciplined.

78. Deputy Chief Raymond Nunez #1816 issued the discipline but did not serve it to Plaintiff in person, and Plaintiff was not offered the opportunity to request a union representative, contrary to KCKPD's standard procedure.

79. The discipline was served to Plaintiff in Captain Falkner's office, and it was Captain Falkner who met with Plaintiff and had Plaintiff sign the disciplinary papers.

80. It is standard procedure that when KCKPD officers receive discipline regarding an Internal Affairs investigation, the disciplined officers are brought up to the Bureau of Operations with a union rep from the Fraternal Order of Police (FOP), which did not occur when Plaintiff was disciplined.

81. After receiving the discipline, Plaintiff immediately contacted the Vice President of the FOP, Ofc. Kirkpatrick #1843, who advised that he would speak with Deputy Chief Nunez the following week to begin the grievance process.

82. Ultimately, Plaintiff's suspension was grieved to points by Officer John Landis.

83. KCKPD refused to remove the fifteen (15) disciplinary points from Plaintiff's record despite her good faith arrest of the individual suspect named in Officer Ulloa's report.

84. As a result of the aforementioned allegations in this Complaint, Plaintiff has suffered emotional distress, pain, suffering, humiliation, anxiety, dread, inconvenience, mental anguish, embarrassment, and loss of enjoyment of life; sought therapy, has been diagnosed with Post-Traumatic Stress Disorder (PTSD), lost accrued sick time, had to use FMLA, and has suffered a loss of enjoyment of life.

85. Defendant Unified Government and Defendant Oakman had the authority and power to offer paid administrative leave to Plaintiff after she was sexually assaulted and harassed by Briones in the shared locker room and didn't. Instead, Plaintiff, as a victim of a crime, had to use her accrued sick time and FMLA while Briones received paid administrative leave during the Internal Affairs investigation. Even after the Internal Affairs investigation and the criminal conviction of Briones, Defendant Unified Government and Defendant Oakman never took any steps to reimburse Plaintiff for the sick time she used after she was sexually assaulted and harassed in the shared locker room by a fellow officer.

86. Defendant Unified Government and Defendant Oakman have allowed other male officers to be placed on paid administrative leave after those male officers have committed crimes.

## COUNT ONE

## Title VII - SEX DISCRIMINATION (Disparate Treatment) (42 U.S.C. §§ 2000e et seq.) (Against Defendant Unified Government of Wyandotte County/Kansas City, Kansas)

87. Plaintiff restates and incorporates by reference, as if fully set forth herein, all paragraphs within this Complaint.

88. Plaintiff is an "employee" as defined under 42 U.S.C. § 2000e(f).

89. Defendant Unified Government is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

90. Sex is a protected class under Title VII.

91. Plaintiff is a member of a protected class because she is female.

92. Title VII prohibits harassment and discrimination in the workplace.

93. Defendant Unified Government discriminated against Plaintiff with respect to the terms, conditions, and privileges of her employment because of her sex.

94. Under Title VII, it is unlawful for an employer "to discharge any individual, or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's … sex." 42 U.S.C. § 2000e-2(a)(1).

***Discriminatory Denial of Changing Facilities***

95. From at least January 13, 2022 until October 17, 2025, Defendant Unified Government expected Plaintiff and other female officers to share a locker room with male officers.

96. Defendant Unified Government knew or should have known that male officers at West Patrol and South Patrol regularly undressed in the shared locker room, and knew or should have known that Plaintiff and other female officers had no designated private or separate place to undress and change into and out of their uniform.

97. Defendant Unified Government had the means to provide a designated separate changing area for Plaintiff and other female officers throughout this period.

98. Construction on the shared locker room began on October 17, 2025, only four (4) days after Plaintiff reported being sexually assaulted and harassed by Briones in the shared locker room, and construction was completed within days, although it still is not providing a secure area for Plaintiff and other female officers, as the walls separating the male and female locker rooms do not reach up to the ceiling, giving access to any male officer to look into the female locker room if they choose to.

99. Defendant Unified Government knowingly kept the shared locker room arrangement in place for years, which denied Plaintiff and other female officers a term, condition, and privilege of employment enjoyed by male officers, namely a place to undress and change into and out of their police uniform privately.

100. Defendant Unified Government treated similarly situated male officers more favorably than Plaintiff and other female officers, including but not limited to the following ways:

a. Plaintiff and other female officers were required to share a small open communal locker room with male officers, which created discomfort each day Plaintiff worked and had to use her locker in the shared locker room.

b. Plaintiff and other female officers were required to share a small open communal locker room with male officers and be subjected to male officers getting undressed in their presence.

c. Plaintiff and other female officers could not use the shared open communal locker room the same way that males used the shared locker room because doing so would have required Plaintiff and other female officers to get undressed and compromise their bodily privacy in front of male officers.

d. Plaintiff and other female officers were not provided a designated separate locker room to get undressed and change into and out of their uniform.

e. Officer Ulloa, a male officer, was not disciplined as harshly as Plaintiff when Officer Ulloa put the wrong suspect information on a report relied upon by Plaintiff in making a good faith arrest.

f. Plaintiff was required to file a grievance to have a two-day suspension removed that a male officer never received despite his error on a report that led to Plaintiff's discipline.

g. Plaintiff had to make a report of sexual assault and harassment to receive similar workplace conditions as male officers, specifically a designated separate, although unsecured, locker room.

h. Although it is standard procedure that when KCKPD officers receive discipline regarding an Internal Affairs investigation, the disciplined officers are brought up to the Bureau of Operations with a union rep from the Fraternal Order of Police (FOP), which did not occur when Plaintiff was disciplined.

i. Male officers are placed on paid administrative leave after committing crimes, and Plaintiff had to use personal sick time and FMLA after being sexually assaulted and harassed in the shared locker room.

101. Plaintiff's sex was a motivating factor in Defendant Unified Government's treatment of Plaintiff and other female officers being treated less favorably than male officers, in violation of 42 U.S.C. § 2000e-2(m).

***Discriminatory Investigation and Discipline***

102. On or about March 12, 2026, Defendant Unified Government notified Plaintiff that the Internal Affairs Unit was investigating her for an alleged false arrest that occurred approximately one (1) year earlier. Plaintiff had received no prior notice of any complaint, allegation, or investigation concerning that arrest.

103. Plaintiff denies that she made a false arrest, and the allegation against her is false.

104. On or about May 29, 2026, Defendant Unified Government, through Deputy Chief Raymond Nunez, imposed on Plaintiff an unpaid two-day suspension and assessed fifteen (15) disciplinary points to Plaintiff. The suspension and points were recorded in Plaintiff's personnel file as a permanent disciplinary record.

105. In imposing this discipline, Defendant Unified Government departed from its standard procedures. Plaintiff was not brought before the Bureau of Operations, and she was not given the opportunity to have a Fraternal Order of Police representative present. Under KCKPD standard practice, officers disciplined after an Internal Affairs Investigation receive both.

106. The unpaid suspension and disciplinary points were adverse employment actions.

107. Plaintiff's sex was a motivating factor in Defendant Unified Government's decisions to investigate and discipline Plaintiff, in violation of 42 U.S.C. § 2000e-2(m).

***Damages***

108. As a direct and proximate result of Defendant Unified Government's discrimination, Plaintiff has suffered lost wages and benefits, emotional pain, suffering, humiliation, anxiety, dread, inconvenience, mental anguish, embarrassment, and loss of enjoyment of life. Additionally, Plaintiff sought therapy, has been diagnosed with PTSD, lost accrued sick time, and had to use FMLA,  and the amount of all damages will be proven at trial by Plaintiff.

109. Plaintiff is entitled to compensatory damages under 42 U.S.C. § 1981a(a)(1) and (b)(3), and equitable relief under 42 U.S.C. § 2000e-5(g), including, but not limited to, back pay, reimbursement of benefits, and removal of the suspension and disciplinary points from her personnel file.

110. Plaintiff has incurred and will continue to incur attorneys' fees, costs, and expenses of suit.

111. This Court has discretion under 42 U.S.C. § 2000e-5(k) to award Plaintiff reasonable attorneys' fees, including expert fees, and costs.

WHEREFORE, Plaintiff prays that this Court will, after trial by jury, enter judgment against Defendant Unified Government and grant Plaintiff back pay and lost benefits; compensatory damages for emotional pain, suffering, humiliation, anxiety, dread, inconvenience, mental anguish, embarrassment, and loss of enjoyment of life; an order directing Defendant to remove the May 29, 2026 suspension and remove the associated fifteen (15) disciplinary points from Plaintiff's personnel file; a declaration that Defendant's conduct violated Title VII; reasonable attorneys' fees, expert witness fees, and litigation costs; an award of prejudgment interest and post-judgment interest at the maximum legal rate; and such other relief as the Court deems just and proper.

## COUNT TWO

## Title VII - DISPARATE IMPACT (42 U.S.C. §§ 2000e et seq.)

## (Against Defendant Unified Government of Wyandotte County/Kansas City, Kansas)

112. Plaintiff restates and incorporates by reference, as if fully set forth herein, all paragraphs within this Complaint.

113. Plaintiff is an "employee" as defined under 42 U.S.C. § 2000e(f).

114. Defendant Unified Government is an "employer" as defined under Title VII.

115. Sex is a protected class under Title VII.

116. Plaintiff is a member of a protected class because she is female.

117. Title VII prohibits harassment and discrimination in the workplace.

118. Defendant Unified Government discriminated against Plaintiff with respect to the terms, conditions, and privileges of her employment because of her sex.

119. Defendant Unified Government maintained a specific, facially neutral employment practice of providing its officers at West Patrol and South Patrol with a single open communal locker room and changing area shared between male and female officers and not separated by sex.

120. Defendant Unified Government's practice of maintaining an open, communal shared locker room for male and female officers, and not separated by sex, caused a significant disparate impact on female officers, including Plaintiff, as compared to male officers.

121. Because KCKPD's sworn workforce was consistently more than eighty-five percent (85%) male, male officers who used the shared locker room did so primarily in the presence of other male officers, while female officers who used the shared locker room could do so only in the presence of a majority of male officers.

122. As a result, male officers were able to, and did, use the shared locker room to undress and change into and out of their police uniforms, while Plaintiff and other female officers could not undress or change into and out of their police uniforms without feeling uncomfortable and exposing themselves in the presence of male officers, and in practice did not do so out of discomfort.

123. Defendant Unified Government's practice further exposed female officers, including Plaintiff, to male coworkers in stages of undress.

124. Defendant Unified Government's practice of maintaining a shared, non-sex-separated locker room was not job-related for the position of police officer and was not consistent with business necessity.

125. An alternative employment practice with less disparate impact, namely separating the locker room by sex or providing a designated separate secure changing area for Plaintiff and other female officers, was available to Defendant Unified Government at all relevant times. Defendant Unified Government refused to adopt that alternative until after Plaintiff was sexually assaulted and harassed by a male officer in the shared locker room, at which point Defendant Unified Government completed the alternative within days.

126. Even after adopting the alternative separate locker room for female officers, it continues to cause disparate impact as follows:

a. Female officers still have to walk through the male locker room to reach the section designated as the female locker room.

b. The section now designated for female officers is not completely secure as the walls separating the male and female locker rooms do not reach up to the ceiling, giving access to any male officer to look into the female locker room if they choose to.

127. Similarly, KCKPD completed a similar construction to the South Patrol locker room after Plaintiff's report of sexual assault and harassment in the shared locker room at West Patrol in October 2025, which also requires female officers to walk through a male locker room to reach the area designated for female officers. Prior to this construction, the South Patrol locker room was completely open, which sergeants could view from their desks.

128. Plaintiff worked at South Patrol in June 2022 and was subjected to the South Patrol shared locker room during that time, when it was completely open, and sergeants could view the shared locker room from their desks.

129. As a result of Defendant's unlawful acts, Plaintiff is entitled to equitable relief, including Defendant immediately providing a safe and secure locker room with walls that reach to the ceiling.

130. Plaintiff has incurred and will continue to incur attorneys' fees, costs, and expenses of suit.

131. This Court has discretion under 42 U.S.C. § 2000e-5(k) to award Plaintiff reasonable attorneys' fees, including expert fees, and costs.

WHEREFORE, Plaintiff prays that this Court will enter judgment against Defendant Unified Government and grant Plaintiff a declaration that Defendant violated Title VII; grant Plaintiff equitable relief, including an order that Defendant immediately provide a safe and secure locker room for female officers with walls that reach to the ceiling; reasonable attorneys' fees, expert witness fees and litigation costs; an award of prejudgment interest and post-judgment interest at the maximum legal rate; and grant such other further relief as the Court deems just and proper.

## COUNT THREE

**Title VII - HOSTILE WORK ENVIRONMENT (42 U.S.C. §§ 2000e et seq.)**
**(Against Defendant Unified Government of Wyandotte County/Kansas City, Kansas)**

132. Plaintiff restates and incorporates by reference, as if fully set forth herein, all paragraphs within this Complaint.

133. Plaintiff is an "employee" as defined under 42 U.S.C. § 2000e(f).

134. Defendant Unified Government is an "employer" as defined under Title VII.

135. Sex is a protected class under Title VII.

136. Plaintiff is a member of a protected class because she is female.

137. Defendant Unified Government discriminated against Plaintiff with respect to the terms, conditions, and privileges of her employment because of her sex.

138. Plaintiff was required to share a locker room with male officers from on or about January 13, 2022 until on or about October 17, 2025, which was four (4) days after Plaintiff reported being sexually assaulted and harassed by Briones in the shared locker room.

139. On or about October 17, 2025, Assistant Chief Major Shane Turner sent out a department-wide email, which stated:

> "Effective immediately you may no longer change your clothing in the various locker rooms that are not separated by gender. Removing outer equipment such as outer vest carriers and duty belts and placing them in your locker is acceptable. If it is necessary to change your clothing you may use bathroom facilities or other secure facilities as long as you enter and leave the facilities fully clothed."

140. It was a known fact amongst KCKPD officers and management-level employees that male officers frequently undressed in the shared locker room while changing into and out of their police uniforms.

141. From on or about January 13, 2022 until on or about October 17, 2025, there were no rules or policies within KCKPD concerning officers getting undressed or changing clothes in the shared locker room.

142. From on or about January 13, 2022 until on or about October 17, 2025, Plaintiff and other female officers did not have a separate locker room to get undressed and change into and out of their police uniforms.

143. Plaintiff was subjected to sexual assault and harassment because of her sex when Briones, a former police officer and Plaintiff's coworker, used his hand to rub Plaintiff's vagina in the shared locker room on or about October 13, 2025.

144. The sexual assault and harassment committed against Plaintiff by Briones was unwelcome, severe, and altered the terms and conditions of Plaintiff's employment, creating a hostile and abusive work environment.

145. As a result of the sexual assault, harassment, and hostile work environment, Plaintiff had difficulty sleeping, eating, and concentrating, experienced a loss of enjoyment of life, and has been diagnosed with PTSD.

146. Defendant Unified Government knew or should have known of Briones' propensity to sexually harass at least one other female officer prior to committing sexual assault and harassment against Plaintiff because its supervisory employees, including Sergeant Donato and Sergeant Wolf, knew that Briones had sexually harassed another female officer for years before Briones sexually assaulted and harassed Plaintiff in the shared locker room.

147. At all relevant times set forth in this Complaint, Sergeant Donato and Sergeant Wolf were supervisory employees of Defendant Unified Government. Under Defendant Unified Government's anti-harassment policy, supervisors are required to report known or suspected sexual harassment to upper command/Internal Affairs and are authorized to take corrective action to stop it.

148. Because Sergeant Donato and Sergeant Wolf were obligated to report and empowered to address Briones' sexual harassment of another female officer, their knowledge is imputed to Defendant Unified Government.

149. Despite this knowledge, Defendant Unified Government took no remedial action. It did not investigate Briones, did not discipline him, did not restrict his access to the shared locker room, and instead allowed Briones to be an Acting Sergeant.

150. Defendant Unified Government's failure to act on its knowledge of Briones' propensity to sexually harass female officers was negligent and was a proximate cause of the sexual assault and sexual harassment Plaintiff suffered at the hands of Briones on or about October 13, 2025 in the shared locker room.

151. Defendant Unified Government is also directly liable for the hostile environment created by the shared locker room, because it designed, maintained, and controlled that facility and expected Plaintiff and other female officers to use it for years.

152. From the commencement of Plaintiff's employment as an officer with KCKPD until Plaintiff was sexually assaulted and harassed in the shared locker room by Briones, Plaintiff had worked approximately 983 days and endured 983 days of discomfort because of having to share a locker room with male officers and being subjected to male officers getting undressed and changing into and out of their police uniforms.

153. Briones having used his hand to rub Plaintiff's vagina in the shared locker room was severe and unwelcome by Plaintiff.

154. Defendant forcing Plaintiff and other female officers to endure each work day being subjected to a shared locker room with male officers often seen getting undressed and changing into and out of their police uniforms was pervasive, as it occurred on a regular basis.

155. Plaintiff found the shared locker room environment and the male officers undressing and changing into and out of their police uniform to be offensive and unwelcoming.

156. Plaintiff and other female officers were never provided a separate space from male officers to undress and change clothes until after Plaintiff was sexually assaulted and harassed by Briones in the shared locker room.

157. A reasonable female in Plaintiff's position as a female officer would find the shared locker room and male officers undressing in the shared locker room in the presence of female officers as offensive, unwelcoming, hostile, and intimidating.

158. Defendant Unified Government knew or should have known that the shared locker room where male officers were often seen undressing in the presence of female officers on a regular basis was abusive, offensive, unwelcoming, hostile, and intimidating to female officers.

159. Defendant Unified Government knew or should have known that female officers needed a separate place to get undressed and change into and out of their uniforms without male officers present.

160. As a direct and proximate cause of Defendant Unified Government's unlawful employment practices, Plaintiff has suffered and continues to experience pain and suffering, humiliation, anxiety, dread, inconvenience, mental anguish, embarrassment, and loss of enjoyment of life, sought therapy, has been diagnosed with PTSD, lost accrued sick time, and had to use FMLA, and the amount of all damages will be proven at trial by Plaintiff.

161. Plaintiff is entitled to equitable relief, including injunctive relief, declaratory relief, and back pay under 42 U.S.C. § 2000e-5(g).

162. Plaintiff has incurred and will continue to incur attorneys' fees, costs, and expenses of suit.

163. This Court has discretion under 42 U.S.C. § 2000e-5(k) to award Plaintiff reasonable attorneys' fees, including expert fees, and costs.

WHEREFORE, Plaintiff prays that this Court will, after trial by jury, enter judgment against Defendant Unified Government and grant Plaintiff back pay and lost benefits; compensatory damages for emotional pain, suffering, humiliation, anxiety, dread, inconvenience,

mental anguish, embarrassment, and loss of enjoyment of life; an order directing Defendant to remove the May 29, 2026 suspension and remove the associated fifteen (15) disciplinary points from Plaintiff's personnel file; a declaration that Defendant's conduct violated Title VII; grant Plaintiff equitable relief, including an order that Defendant immediately provide a safe and secure locker room for female officers with walls that reach to the ceiling; reasonable attorneys' fees, expert witness fees, and litigation costs; an award of prejudgment interest and post-judgment interest at the maximum legal rate; and such other relief as the Court deems just and proper.

## COUNT FOUR

### Title VII - RETALIATION (42 U.S.C. §§ 2000e et seq.)
### (Against Defendant Unified Government of Wyandotte County/Kansas City, Kansas)

164. Plaintiff restates and incorporates by reference, as if fully set forth herein, all paragraphs within this Complaint.

165. Plaintiff is an "employee" as defined under 42 U.S.C. § 2000e(f).

166. Defendant Unified Government is an "employer" as defined under Title VII.

167. Title VII prohibits employers from retaliating against employees who oppose unlawful employment practices or participate in any proceeding concerning unlawful employment practices, including but not limited to EEOC administrative proceedings.

168. Plaintiff engaged in a protected activity by opposing being sexually assaulted and harassed by Briones in the shared locker room and reporting the sexual assault and sexual harassment to her supervisors on or about October 16, 2025, and to Internal Affairs.

169. Plaintiff engaged in a protected activity on or about October 24, 2025, by filing her first Charge of Discrimination and Harassment with the EEOC against Defendant Unified Government alleging sex discrimination and harassment and opposing the shared locker room.

170. On or about March 12, 2026, approximately one week before a scheduled mediation concerning Plaintiff's first filed EEOC Charge, Plaintiff was advised by KCKPD that she was being investigated by Internal Affairs for allegedly making a false arrest almost one (1) year prior, which Plaintiff had no prior knowledge or notice of any such allegation or investigation against her, and Plaintiff contends those allegations made against her were false.

171. On or about March 25, 2026, Plaintiff filed a second Charge with the EEOC against Defendant Unified Government alleging Retaliation concerning the investigation commenced by KCKPD approximately one (1) week before the scheduled mediation concerning her first EEOC Charge against Defendant.

172. After Plaintiff filed her second EEOC Charge against Defendant Unified Government, Plaintiff was served with a letter of suspension on or about May 29, 2026, as a result of the Internal Affairs investigation concerning allegations against Plaintiff dating back approximately one (1) year prior. The suspension was an unpaid two-day suspension, along with Plaintiff being assessed fifteen (15) points.

173. The discipline was issued by Deputy Chief Raymond Nunez; however, the discipline was not personally served to Plaintiff by Deputy Chief Raymond Nunez, but instead served to Plaintiff in Captain Falkner's office, at which time Captain Falkner had Plaintiff sign the disciplinary papers.

174. It is standard procedure when a KCKPD officer is disciplined regarding an Internal Affairs investigation, the officer is brought up to the Bureau of Operations with a Union Representative from the Fraternal Order of Police, which did not occur in Plaintiff's case.

175. Title VII's anti-retaliation provision, 42 U.S.C. § 2000e-3(a), makes it unlawful for an employer to discriminate against an employee because she "has opposed any practice made an unlawful employment practice" or "has made a charge … or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

176. At the time Internal Affairs opened its investigation, and at the time Deputy Chief Nunez imposed discipline, Defendant Unified Government, Defendant Chief of Police Karl Oakman, Major Shane Turner, and Major Brittanie Pruitt knew that Plaintiff had reported Briones' sexual assault and harassment, knew that Plaintiff had filed an EEOC charge against Defendant Unified Government, and knew that Plaintiff was scheduled to participate in an EEOC mediation concerning Plaintiff's first EEOC Charge against Defendant Unified Government.

177. The allegation underlying the investigation of Plaintiff concerned an alleged false arrest made by Plaintiff approximately one (1) year earlier. There had never been any allegation or investigation of a purported false arrest made by Plaintiff prior to Plaintiff's first EEOC Charge filed against Defendant Unified Government and prior to one (1) week before the scheduled EEOC mediation.

178. But for Plaintiff's protected activity, Defendant Unified Government would not have investigated or disciplined Plaintiff.

179. Defendant Unified Government's departure from its standard disciplinary procedure, the timing of the investigation, and the staleness of the allegation against Plaintiff show that the stated reason for the investigation and discipline of Plaintiff was pretextual.

180. The internal affairs investigation, the unpaid suspension, and the disciplinary points assessed against Plaintiff are materially adverse actions that would dissuade a reasonable employee from making or supporting a charge of discrimination or harassment.

181. As a direct and proximate cause of Defendant Unified Government's unlawful employment practices, Plaintiff has suffered retaliatory discipline and has suffered and continues to experience pain and suffering, humiliation, anxiety, dread, inconvenience, mental anguish, embarrassment, and loss of enjoyment of life, sought therapy, has been diagnosed with PTSD, lost accrued sick time, and had to use FMLA, and the amount of all damages will be proven at trial by Plaintiff.

182. Plaintiff is entitled to equitable relief, including declaratory and injunctive relief and back pay under 42 U.S.C. § 2000e-5(g).

183. Plaintiff has incurred and will continue to incur attorneys' fees, costs, and expenses of suit.

184. This Court has discretion under 42 U.S.C. § 2000e-5(k) to award Plaintiff reasonable attorneys' fees, including expert fees, and costs.

WHEREFORE, Plaintiff prays that this Court will, after trial by jury, enter judgment against Defendant Unified Government and grant Plaintiff compensatory damages concerning economic loss in the form of lost wages and benefits of employment; compensatory damages concerning emotional pain, suffering, humiliation, anxiety, dread, inconvenience, mental anguish, embarrassment, and loss of enjoyment of life; an order directing Defendant to remove the May 29, 2026 suspension and remove the associated disciplinary points from Plaintiff's personnel file; a declaration that Defendant's conduct violated Title VII; reasonable attorneys' fees, expert witness fees and litigation costs; an award of prejudgment interest and post-judgment

interest at the maximum legal rate; and grant such other further relief as the Court deems just and proper.

## COUNT FIVE

### 42 U.S.C. § 1983 - Violation of the Fourteenth Amendment (Equal Protection Clause)
### (Against Defendant Chief of Police Karl Oakman, Individually)

185. Plaintiff restates and incorporates by reference, as if fully set forth herein, all paragraphs within this Complaint.

186. Plaintiff brings Count Five against Defendant Chief Karl Oakman, individually, for having engaged in unlawful discriminatory acts that are prohibited under 42 U.S.C. § 1983 in violation of the Fourteenth Amendment Equal Protection Clause.

187. The Fourteenth Amendment's Equal Protection Clause prohibits sex discrimination in public employment and applies to Defendant Oakman's conduct.

188. At all relevant times in this Complaint, Defendant Oakman was employed as the Chief of Police of the Kansas City, Kansas Police Department and was employed by Defendant Unified Government.

189. At all relevant times in this Complaint, Defendant Oakman was acting in the course and scope of his employment as a Unified Government employee.

190. As alleged in Paragraphs 70-72, Defendant Oakman had final authority over KCKPD facilities, knew or should have known that male officers were undressing in the presence of female officers in the shared locker room, knew or should have known that female officers at West Patrol and South Patrol had no separate, comparable private place to get undressed and change into and out of their police uniform, and had the authority and means to

provide one, yet chose to maintain the shared locker room arrangement until after Plaintiff reported being sexually assaulted and harassed by a male officer in the shared locker room.

191. Defendant Oakman knew or should have known of the propensities of Briones to sexually harass female officers.

192. Defendant Oakman knew or should have known that the designated female locker room constructed at West Patrol on or about October 17, 2025, four (4) days after Plaintiff was sexually assaulted in the shared locker room, was and is still not secure, as the wall separating the male and female locker rooms does not fully separate the two locker rooms because the wall does not go completely up to the ceiling.

193. Defendant Oakman knew or should have known that male officers were treated more favorably than female officers.

194. Defendant Oakman knew or should have known that Plaintiff was disciplined more harshly than male officers.

195. Defendant Oakman knew or should have known that male officers have received paid administrative leave during investigations for crimes that those male officers committed while Plaintiff had to use sick time and FMLA after being sexually assaulted at work in the shared locker room by a fellow male officer, Briones.

196. Defendant Oakman knew or should have known that standard procedures were not being followed for female officers, specifically Plaintiff, concerning Plaintiff not being brought up to the Bureau of Operations with a union rep from the Fraternal Order of Police (FOP) at the time Plaintiff was disciplined as alleged herein.

197. Defendant Oakman knew or should have known that Plaintiff was subjected to a hostile work environment during her employment with KCKPD.

198. Defendant Oakman knew or should have known that Plaintiff had been retaliated against as alleged in this Complaint after Plaintiff filed her initial EEOC Charge and again after Plaintiff filed her second EEOC Charge.

199. Defendant Oakman knew or should have known that KCKPD employees were not being properly trained, supervised, or disciplined on anti-discrimination and anti-harassment laws and policies.

200. Defendant Oakman failed to properly train, supervise, or discipline KCKPD employees, including management-level employees, on anti-discrimination and anti-harassment laws and policies.

201. Defendant Oakman's decisions and actions were a direct and proximate cause of the deprivation of Plaintiff's right to equal protection of the laws.

202. At all relevant times in this Complaint, Defendant Oakman deprived Plaintiff of her constitutional rights by directly ordering, authorizing, or knowingly acquiescing in the sex discrimination, retaliation, and hostile work environment alleged by Plaintiff.

203. At all relevant times in this Complaint, Defendant Oakman acted under color of state law and intentionally discriminated against Plaintiff and other female officers because of their sex by having a shared male/female locker room for years at the Kansas City, Kansas Police Department.

204. Defendant Oakman's conduct was egregious, intentional, and undertaken with a conscious disregard for the high probability of causing emotional and financial harm to Plaintiff, thereby justifying an award of punitive damages.

205. As a direct and proximate result of Defendant Oakman's unlawful acts concerning discrimination, retaliation, and hostile work environment alleged by Plaintiff, Plaintiff has

suffered and continues to experience pain and suffering, humiliation, anxiety, dread, inconvenience, mental anguish, embarrassment, and loss of enjoyment of life, sought therapy, has been diagnosed with PTSD, lost accrued sick time, and had to use FMLA, and the amount of all damages will be proven at trial by Plaintiff.

206. As a result of Defendant Oakman's unlawful acts, Plaintiff is entitled to compensatory damages and punitive damages.

207. Plaintiff has incurred and will continue to incur attorneys' fees, costs, and expenses of suit.

208. This Court has discretion under 42 U.S.C. § 1988 to award Plaintiff reasonable attorney fees, including expert fees.

WHEREFORE, Plaintiff prays that this Court will, after trial by jury, enter judgment against Defendant Oakman in his individual capacity and grant Plaintiff damages in an amount to be proven at trial, including but not limited to damages for back pay, lost benefits, emotional pain, suffering, humiliation, anxiety, dread, inconvenience, mental anguish, embarrassment, loss of enjoyment of life; punitive damages against Defendant Oakman in his individual capacity, in an amount sufficient to punish Defendant Oakman's willful, malicious, and reckless indifference to Plaintiff's constitutional rights and to deter future constitutional violations; reasonable attorneys' fees, expert witness fees and litigation costs; an award of prejudgment interest and post-judgment interest at the maximum legal rate; and grant such other further relief as the Court deems just and proper.

**DESIGNATION OF PLACE OF TRIAL**

Pursuant to D. Kan. Rule 40.2, Plaintiff designates Kansas City, Kansas as the place of trial.

**DEMAND FOR JURY TRIAL**

Plaintiff requests a trial by jury on all issues in this case that are so triable.

Dated: November 9, 2026

Respectfully Submitted,

By: *Rose C. Briscoe*

ROSE C. BRISCOE KS Bar No. 26614
LAW OFFICE OF ROSE C. BRISCOE, LLC
575 Lexington Ave., 14th Floor
New York, NY 10022
Telephone: (816)233-2244
rosebriscoe@ymail.com

*Attorney for Plaintiff*